**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**
**AT AKRON**

| | | |
|---|---|---|
| **GPAT PATTERSON, Ph.D.,** | ) | **Case No. 5:22-cv-02052** |
| | ) | |
| **Plaintiff,** | ) | **Judge: Hon. John R. Adams** |
| **v.** | ) | |
| | ) | **FIRST AMENDED COMPLAINT** |
| **KENT STATE UNIVERSITY, _et al._,** | ) | **AND JURY DEMAND** |
| | ) | |
| **Defendants.** | ) | |

**COMES NOW,** Plaintiff, GPat Patterson, Ph.D., by and through counsel, and for their First Amended Complaint and Jury Demand against Defendants Kent State University, Mandy Munro-Stasiuk, Ph.D., and Julie M. Mazzei, Ph.D., states as follows:

**NATURE OF THIS ACTION**

1. By this action, Plaintiff GPat Patterson, Ph.D., a transgender person who uses "they," "their," and "them" pronouns, seeks redress against Defendant Kent State University, a public research institution, and recipient of federal funding, for employment discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, _et seq._ ("Title VII"), when it discriminated against them in their occupation, employment, advancement, and career based on their sex, gender, gender identity, and gender expression on pretextual grounds, and retaliated against them on the same or similar bases.

2. Dr. Patterson further seeks redress against Defendants Mandy Munro-Stasiuk, Ph.D. and Julie M. Mazzei, Ph.D., Kent State employees acting under color of law under 42 U.S.C. §1983, _et seq._ ("Section 1983"), for violating Dr. Patterson's rights arising under the Due Process Clauses of the Fifth and Fourteenth Amendments to the United

States Constitution, and the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution by depriving Dr. Patterson of their constitutional rights and interests in the reasonable and objective expectation of their professional reputation, and advancement in their occupation, employment, and career.

3.      Without limitation, Dr. Patterson seeks (a) compensatory damages from all Defendants, jointly and severally, in the form of back and front pay, statutory damages, emotional distress damages, equitable relief, pre-and post-judgment interest; (b) punitive damages; (c) reimbursement of their attorney's fees and costs; (d) injunctive relief; and (e) any and all other relief to which they're entitled.

## PARTIES, JURISDICTION, AND VENUE

4.      Plaintiff incorporates the preceding paragraphs of this Complaint as if fully rewritten.

5.      At all times relevant to this Complaint, Plaintiff, GPat Patterson, Ph.D. ("Dr. Patterson") has resided in Summit County, Ohio and Hamilton County, Ohio.

6.      At all times relevant to this Complaint Defendant, Kent State University ("Kent State") has been a public research institution, and recipient of funding from the United States Department of Education, with a principal location and place of business in Portage County, Ohio.

7.      At all times relevant to this Complaint, Defendant Mandy Munro-Stasiuk, Ph.D. ("Dean Munro-Stasiuk") has been an employee of Kent State acting under color of law, and a resident of Trumbull County, Ohio.

8.      At all times relevant to this Complaint, Defendant Julie M. Mazzei, Ph.D.

("Dr. Mazzei")  has been an employee of Kent State acting under color of law, and a resident of Summit County, Ohio.

9.     Kent State, Dean Munro-Stasiuk, and Dr. Mazzei may be collectively referred to in this Complaint as "Defendants" unless otherwise indicated.

10.    This Court has personal jurisdiction over the parties to this action, and original subject matter jurisdiction over the controversy alleged in the same under 28 U.S.C.  §1331, 42 U.S.C. §1983, and 42 U.S.C. §2000e-5(f)(3).

11.    Venue is appropriate in this Court under 28 U.S.C. §1391(b) as the facts, occurrences, transactions, and series of facts, occurrences, and transactions giving rise to this Complaint took place in this federal judicial District.

## FACTS

### Dr. Patterson's impeccable background and achievements

12.    Plaintiff incorporates the preceding paragraphs of this Complaint as if fully rewritten.

13.    Dr. Patterson is openly transgender and has openly expressed their gender identity at all times relevant to this Complaint.

14.    In 2004, Dr. Patterson earned a Master of Arts in English Literature from Kent State University.

15.    In 2013, Dr. Patterson earned their Ph.D. in sexuality, gender, and rhetoric, and a graduate certificate in women's, gender, and sexuality studies from Miami University.

16.    Dr. Patterson is an accomplished and revered scholar in the field of rhetoric

and Women's and Lesbian, Gay, Bisexual, and Transgender ("LGBT") Studies and related disciplines.

17.    Since 2002, Dr. Patterson has earned academic appointments in their disciplines at Kent State University, Miami University, Ball State University, and Appalachian State University.

18.    Since 2002, Dr. Patterson has also received innumerable honors, awards, and recognitions for their academic and professional accomplishments in their disciplines including without limitation the following:

    A.    Invitations to present their research in leading academic journals and publications in their discipline;

    B.    Invitations to speak at prestigious conferences around the United States;

    C.    Invitations to publish in peer-reviewed journals, books, and other publications in their field;

    D.    Editing credits in academic textbooks in their field;

    E.    Essays, book reviews, and professional statements connected with their academic research;

    F.    Interviews related to their academic research;

    G.    Refereeing academic conference presentations;

    H.    Giving keynotes, lectures, talks, and other presentations on academic panels related to their scholarship;

    I.    Conducting workshops and other academic events related to their

4

research; and

       J.     Awards for excellence in their scholarship.

19.    Dr. Patterson's record of academic and community service in their fields is similarly unparalleled.

20.    In 2018, Kent State hired Dr. Patterson as a tenure-track Assistant Professor in its English Department and as an Affiliate in LGBT Studies at its Tuscarawas, Ohio campus, in part, based on their academic and professional expertise.

21.    As of the date of the filing of this Complaint, Dr. Patterson is employed by Kent State as a Professor in the English Department of its Tuscarawas, Ohio Campus.

## Kent State University

22.    Plaintiff incorporates the preceding paragraphs of this Complaint as if fully rewritten.

23.    At all times relevant to this Complaint, Kent State has been a public research institution principally located in Kent, Ohio.

24.    At all times relevant to this Complaint, Kent State has received funding from the United States Department of Education and other public sources of funding.

25.    Kent State also has regional campuses in Ashtabula, Burton, East Liverpool, Jackson Township, New Philadelphia, Salem, and Warren, Ohio.

26.    Kent State maintains additional facilities in Cleveland, Independence, and Twinsburg, Ohio, New York City, and Florence, Italy.

27.    As of the date of this Complaint, Kent State is the third-largest university in Ohio with an enrollment of over 34,000 students in its campus-wide system.

28.     Kent State is classified by the Carnegie Classification of Institutions of Higher Education among Doctoral Universities as an institution with "very high research activity.

### **Mandy Munro-Stasiuk, Ph.D.**

29.     Plaintiff incorporates the preceding paragraphs of this Complaint as if fully rewritten.

30.     At all times relevant to this Complaint, Dean Munro-Stasiuk has been an employee of Kent State acting under color of law.

31.     Since March 2022, Dean Munro-Stasiuk has served as the Dean of Kent State's College of Arts and Sciences.

32.     At all times relevant to this Complaint, Dean Munro-Stasiuk has been a geomorphologist and applied remote sensing researcher.  Her scholarship and expertise lie in geomorphology and terrestrial remote sensing geoarchaeology.

33.     Dean Munro-Stasiuk earned a Ph.D. in earth and atmospheric sciences from the University of Alberta, Canada, an M.Sc. in geography from Memorial University of Newfoundland, Canada, and an M.A. in geography and archaeology from the University of Glasgow, Scotland.

34.     Dean Munro-Stasiuk has no academic or professional background, or expertise in LGBT Studies, sexuality, gender, and rhetoric, or women's, gender, and sexuality studies, or their equivalents.

35.     At times relevant to this Complaint, Dean Munro-Stasiuk has been the Chair of Kent State's Department of Geography, Associate Provost for Academic Affairs, and

Interim Senior Associate Provost for Academic Affairs.

## Julie M. Mazzei, Ph.D.

36.　Plaintiff incorporates the preceding paragraphs of this Complaint as if fully rewritten.

37.　At all times relevant to this Complaint, Dr. Mazzei has been an employee of Kent State acting under color of law.

38.　At all times relevant to this Complaint, Dr. Mazzei has served as the Director of Kent State's School of Multidisciplinary Social Sciences and Humanities.

39.　At all times relevant to this Complaint, Dr. Mazzei has taught undergraduate courses on globalization, international politics, comparative politics, human rights, political development, and political violence, and offers graduate courses on human rights, political violence, and development.

40.　At all times relevant to this Complaint, Dr. Mazzei has been a researcher of irregular political violence.

41.　Dr. Mazzei earned a Ph.D. in political science from American University in 2006, an M.A. in political science from American University in 2000, and a B.A. in liberal arts from the University of Massachusetts in 1995.

42.　Dr. Mazzei has no academic or professional background or expertise in LGBT Studies, sexuality, gender, and rhetoric, or women's, gender, and sexuality studies, or their equivalents.

## Defendants offer Dr. Patterson a promotion

43.　Plaintiff incorporates the preceding paragraphs of this Complaint as if fully

7

rewritten.

44.     On November 20, 2020, Dr. Patterson was informed by Kent State's then Director of its Center for Sexuality and Gender Studies ("CSGS"), Dr. Molly Merryman, that she had recommended Dr. Patterson to Dean Munro-Stasiuk as her replacement for that position.

45.     On January 24, 2021, Dr. Merryman informed Dr. Patterson that Dean Munro-Stasiuk would also ask Dr. Patterson to serve on the Steering Committee for the CSGS Program.

46.     In an April 29, 2021, email exchange, Dean Munro-Stasiuk proposed reducing Dr. Patterson's teaching load by fifty percent to accommodate their work with the current Women's Studies and LGBT studies faculty, and to focus their work on building the CGGS academic degree proposal, and the CSGS Program itself.

47.     In the same email exchange, Dean Munro-Stasiuk agreed that the CSGS Program should be moved onto campus grounds, and suggested that Dr. Patterson's teaching load could be further reduced to accommodate their focus on the same.

48.     When Dean Munro-Stasiuk's formal invitation didn't arrive, as promised by Dr. Merryman, Dr. Patterson approached Dr. Merryman about this omission on March 2, 2021.  Dr. Merryman recommended that Dr. Patterson contact Dean Munro-Stasiuk directly because she was worried that Dr. Patterson had been overlooked.

49.     During a videoconference on March 11, 2021, Dean Munro-Stasiuk asked Dr. Patterson how long it would take them to create a Women and Gender Studies ("WGS") major, and whether they wanted to direct Kent State's Center for Gender and

Sexuality Studies ("CGSS").

50.    Dean Munro-Stasiuk further explained that to accommodate Dr. Patterson's promotion, she and Kent State would reduce their teaching load by fifty percent.

51.    In the same videoconference, Dean Munro-Stasiuk expressed that she intended to transition the CGSS into a non-academic role.  Dr. Patterson responded that their interests leaned toward the creation of the WGS academic major and that if the Dean wanted them to direct the non-academic CGSS, they'd be open to the same if CSGS remained attached to academic programs.

52.    Dean Munro-Stasiuk concluded the March 11, 2021, videoconference by recommending that Dr. Patterson initiate a tenure transfer process to Kent State's main campus in Kent, Ohio with the Tuscarawas campus Dean Brad Bielski.

53.    Dean Bielski and Dr. Patterson spoke about Dr. Patterson's tenure transfer to the Kent campus on May 10, 2021.

54.    On May 26, 2021, Dr. Patterson conferenced with Dean Munro-Stasiuk and Dr. Mazzei, in which the Dean orally offered Dr. Patterson the Chair of the CSGS Steering English Department and the WGS Major English Department, which Dr. Patterson accepted.  During the same conference, Dean Munro-Stasiuk reiterated Dr. Patterson's future leadership role in the CSGS Department and communicated that Dr. Patterson's tenure transfer process would be complete starting the 2022-2023 school year.

**Defendants rescind Dr. Patterson's promotion in favor of Dr. Mazzei**

55.    Plaintiff incorporates the preceding paragraphs of this Complaint as if fully

rewritten.

56.     On June 2, 2021, Dr. Mazzei informed Dr. Patterson that Defendants had rescinded their offers of advancement described above.

57.     On June 10, 2021, Dean Munro-Stasiuk informed Dr. Patterson that the reason for this rescission was that an unspecified person expressed "worry" that Dr. Patterson would "erase women" in the WGS curriculum.

58.     On June 11, 2021, Dr. Patterson corresponded with Dean Munro-Stasiuk to express concern over a Title IX violation, in terms of discrimination against transgender persons in the CSGS curriculum, to which they received no response.

59.     On June 16, 2021, Dr. Mazzei, who is neither transgender nor a gender and sexualities studies scholar with any relevant background in those disciplines, or their equivalents, informed Dr. Patterson that she would chair and appoint CSGS leadership positions, which Defendants offered Dr. Patterson during the May 26, 2021, conference.

60.     Dr. Mazzei further declared that Dr. Patterson would no longer be the CGGS Director contrary to Defendants' offer.

61.     In a series of subsequent conversations between Dr. Patterson and Vice President of Diversity, Equity, and Inclusion ("DEI"), Dr. Amoaba Gooden, Dr. Gooden agreed that Dr. Patterson should meet with Dean Munro-Stasiuk and Dr. Mazzei to discuss the series of discriminatory actions that led to the sabotage of Dr. Patterson's leadership and tenure track orally promised by Defendants.  In those conversations, Dr. Gooden noted that Defendants had a track record of disregarding LGBT Studies expertise in general.

62. During a July 6, 2021, video conference attended by Dr. Patterson, Dr. Gooden, and non-tenure track faculty members Lauren Vachon and Professor Suzanne Holt, Dr. Gooden suggested that she conference with Dean Munro-Stasiuk and Dr. Mazzei in her capacity of Director of DEI along with Ms. Vachon and Professor Holt to get to the bottom of Defendants' discriminatory treatment of Dr. Patterson.

63. Dr. Gooden further expressed that she'd contact Dean Munro-Stasiuk to modify an upcoming July 16, 2021, conference with Dr. Gooden, Dean Munro-Stasiuk, Dr. Mazzei, and Dr. Patterson to include the participation of Ms. Vachon and Professor Holt to discuss Defendants' discriminatory treatment of Dr. Patterson.

64. Subsequently, Dr. Patterson contacted Dr. Charmaine Crawford, a WGS expert who had also been excluded from CSGS leadership conversations to inform her of the direction of CSGS and the WGS major, and to invite her to the July 16, 2021, conference.

65. On July 14, 2021, Dr. Patterson emailed Dean Munro-Stasiuk's Office to address the exclusion of Ms. Vachon and Professor Holt from the previously-circulated agenda for the July 16, 2021, conference.  In the same email, Dr. Patterson noted that Dr. Crawford should also be included in the July 16, 2021, conference.  Dean Munro-Stasiuk responded that the conference would include only Dr. Patterson as a representative of the WGS Program.  Not wanting to exclude Ms. Vachon, Professor Holt, and LGBT-identifying Dr. Crawford, Dr. Patterson requested that the conference be postponed to a mutually convenient time to include their input.

66. That day, Dean Munro-Stasiuk retaliated against Dr. Patterson by

11

informing the American Association of University Professors that Defendants had stripped Dr. Patterson of what remained of their leadership responsibilities, which Grievance Chair, Dr. Theresa Walton-Fisette, correctly identified as discrimination based on Dr. Patterson's sex, gender, gender identity, and gender expression.

67.     On July 19, 2021, Dean Munro-Stasiuk emailed Dr. Patterson to inform them that she was further retaliating against them by removing them from what remained of the initial oral agreement between Defendants and Dr. Patterson: the fifty-percent lift of Dr. Patterson's teaching load.

## Dr. Patterson pursues the transfer of their tenure to Kent State's main campus

68.     Plaintiff incorporates the preceding paragraphs of this Complaint as if fully rewritten.

69.     Upon absorbing the retaliation levied by Defendants identified above, Dr. Patterson elected to pursue the transfer of their tenure to Kent State's English Department, which their colleagues enthusiastically had supported for two years.

70.     Indeed, on September 24, 2019, Dr. Patterson conferenced with then-English Department Chair Dr. Robert Trogdon who noted that Kent State's Reappointment, Promotion, and Tenure Committee ("RPT Committee") in the English Department was impressed with Dr. Patterson's file.

71.     Dr. Trogdon further expressed that there was a general consensus that Dr. Patterson would be an appropriate fit for Kent State's main campus, where they could continue pursuing their research and return to teaching graduate students, as they had during their previous tenure-track position at Ball State University.

72.     Along these lines, on August 17, 2020, Dr. Patterson conferenced with Kent State's then-new English Department Chair Dr. Babacar M'Baye.  Dr. M'Baye agreed with Dr. Trogdon's assessment that Dr. Patterson should transfer their tenure to Kent State's main campus noting, without limitation, the impressiveness of their *curriculum vitae* ("CV").

73.     During the same conference, Dr. M'Baye explained that if Kent State's main campus didn't initiate the transfer process soon, Dr. Patterson would be poached by another institution to Kent State's detriment.

74.     To that end, Dr. M'Baye proposed that Dr. Patterson initiate the tenure transfer process in the fall of 2020 so they could be fully transferred to the main campus by the fall of 2021 semester.

75.     According to Dr. M'Baye, all that was needed to process Dr. Patterson's tenure transfer was a letter of support from Kent State's Literacy, Rhetoric & Social Practice ("LRSP") Program.

76.     Later, however, English Department member, Dr. Jen Cunningham objected to the process of initiating Dr. Patterson's tenure transfer request before they were awarded tenure.

77.     Therefore, on July 13, 2021, Dr. Patterson initiated their tenure transfer discussions with Dr. M'Baye, who assured them of enthusiastic support.

78.     Dr. Patterson's transfer was also supported by the Chair of Kent State's LRSP Program, Dr. Pamela Takayoshi, who wrote a letter of support for Dr. Patterson's tenure transfer application.

79.     Dr. Takayoshi noted in July 2021, that the English Department's tenured faculty were unanimously positive and overwhelmingly impressed by Dr. Patterson's skill, accomplishments, and expertise.

80.     On September 2, 2021, Dr. Patterson submitted their tenure transfer request as instructed.

81.     Dean Brad Bielski confirmed, on September 13, 2021, that Kent State's Tuscarawas campus faculty senate unanimously approved Dr. Patterson's tenure transfer request.

## Defendants deny
## Dr. Patterson's tenure transfer request on
## pretextual grounds

82.     Plaintiff incorporates the preceding paragraphs of this Complaint as if fully rewritten.

83.     On September 24, 2021, Kent State's Faculty Affairs Council ("FAC") and RPT Committees held a vote on Dr. Patterson's transfer request.

84.     That evening, however, Dr. Trogdon informed Dr. Patterson that he was saddened to report that the outcome of the vote was not in Dr. Patterson's favor.

85.     At that point, Dr. Trogdon was a member of Kent State's RPT Committee.

86.     Dr. Trogon further expressed that he was troubled and disappointed that his colleagues focused on Dr. Patterson's "personality," rather than their impeccable qualifications when discussing their tenure request application, in violation of the English Department's own policies and procedures.

87.     Along these lines, the FAC and RPT Committees met simultaneously, and

deliberation did not include a ***mandatory*** discussion of Dr. Patterson's research, service, teaching, and scholarship (the sole criteria on which their application was supposed to be evaluated, per the English Department handbook, Kent State policy, and Kent State's Collective Bargaining Agreement ("CBA")).

88.     The behavior of the FAC and RPT Committees in this regard suggests a discriminatory motive because, in the fall of 2020, those Committees reported only glowing reviews about Dr. Patterson's qualifications, and noted that they meet the requirements for tenure on Kent State's main campus.

89.     Notably, Kent State CBA requires (a) that all ballots related to tenure requests be documented in writing; (b) and that all RPT Committee members sign their votes and justify their decisions in writing, none of which occurred with Dr. Patterson's tenure transfer request.

90.     Indeed, the deliberate failure of the RPT Committee to document its pretextual justification for denying Dr. Patterson's tenure transfer request also negatively impacts Dr. Patterson's career advancement and will continue to do so, because that body is the same Committee that would be charged with promoting them to full professorship.

91.     The RPT Committee's pretextual sabotaging of Dr. Patterson's tenure transfer request in 2021, ***also blocks*** Dr. Patterson's ***future ability*** to advance their professional standing and increase their salary by transferring their tenure to Kent State's main campus.

92.     Upon information and belief, however, the only action recorded in writing by the RPT Committee is a request that votes be tallied anonymously, a further violation

of the CBA and the English Department's own policies and procedures, and a further suggestion of discriminatory motive.

93.    Dean Munro-Stasiuk's Office was then notified of the breach in protocol that led to the denial of Dr. Patterson's tenure transfer request as described above.

94.    Upon the same, Dean Munro-Stasiuk's Office failed to familiarize itself with the policies and procedures of Kent State, generally, and of the English Department, specifically, regarding tenure transfer criteria, and/or deliberately ignored those policies.

95.    Dean Munro-Stasiuk's Office further failed to review Dr. Patterson's file, which by any objective measure, demonstrates that their qualifications exceed Kent State's tenure transfer qualifications.

96.    Instead, Dean Munro-Stasiuk's Office offered to sit in on a "do-over" of the vote on Dr. Patterson's tenure transfer application, proclaiming that its presence would ensure that the RPT Committee observed Kent State's policies and procedures and that the review process would be above-board.

97.    The "redo" vote was held on October 1, 2021.

98.    At that gathering, despite the promises of Dean Munro-Stasiuk's Office, Dr. Trogdon confirmed that the RPT Committee denied Dr. Patterson's transfer request on the false and pretextual oral assertion that their "service" to Kent State "had changed" after they earned tenure, and before the RPT Committee voted on their tenure transfer.

99.    The nature of the "change" in Dr. Patterson's service, however, was related to the discrimination they suffered during the CSGS debacle identified above, and months of panic attacks suffered by Dr. Patterson as a direct result of the same.

16

100.    Notably, this allegedly adverse "change" in Dr. Patterson's service to Kent State appears nowhere in writing in their file.  Had the RPT Committee properly documented its supposed objection to the alleged "change" in Dr. Patterson's service to Kent State, Dr. Patterson would have had direct recourse to challenge Defendants' denial of their tenure transfer request, because Kent State and CBA policy instructs that service to Kent State is to be analyzed cumulatively rather than by analyzing a snapshot in time.

101.    Defendants' collective reliance on the alleged "change" in Dr. Patterson's service to Kent State, coupled with their deliberate collective failure to document the same further suggests (a) their discriminatory motives in denying Dr. Patterson's tenure transfer request, and (b) their eagerness to latch on to any pretextual justification to conceal its unlawful conduct.

102.    Regardless, Defendants' collectively flimsy and pretextual justifications for denying Dr. Patterson's tenure transfer request fly in the face of the objective fact that Dr. Patterson's service to Kent State still far and away exceeded Kent State's tenure transfer requirements.

103.    Dean Munro-Stasiuk's Office then rubber-stamped the second vote as legitimate and relied on the same as the justification for denying Dr. Patterson's tenure transfer request.

104.    The RPT Committee never supplied Dr. Patterson with a written explanation of why their qualifications didn't meet its standards.

105.    At the time of their requests for promotion and tenure transfer identified above, Dr. Patterson was Kent State's only openly transgender tenured professor.  They

17

were, and remain, the most objectively qualified person for the promotions and advancements for which they applied, as noted repeatedly by Kent State's own faculty, and the renowned faculty of other Universities.

106.    Without limitation, the following esteemed academics offered letters of support on behalf of Dr. Patterson:

    A.    Dr. Takayoshi;

    B.    Malea Powell, Professor of Research, College of Arts & Letters, American Indian & Indigenous Studies Program, Michigan State University, and Editor, *College Composition & Communication*; and

    C.    Staci M. Perryman-Clark, Ph.D., Professor of English and Gender and Women's Studies, Western Michigan University, then-Assistant Chair-Elect, Conference on College Composition and Communication.

107.    In addition, on or about December 22, 2021, upon a review of their file, a murderer's row of accomplished academics and professionals unanimously and unequivocally concluded that Dr. Patterson "***exceeds*** all expectations as laid out by Kent State University's criteria for tenure at the main Kent State campus," and tendered the same to Defendants (emphasis supplied).

## CAUSES OF ACTION

### Count I
**Violation of 42 U.S.C. §2000e, *et seq*.**
**by Defendant Kent State University:**

**Discrimination and retaliation based on**
**sex, gender, gender identity, and gender expression**

108.    Plaintiff incorporates the preceding paragraphs of this Complaint as if fully

rewritten.

109.     As an openly transgender person, Plaintiff has been a member of a protected class within the meaning of Title VII at all times relevant to this Complaint.

110.     At all times relevant to this Complaint, Defendants knew that Plaintiff was a transgender person and member of a protected class within the meaning of Title VII.

111.     Kent State was an "employer" at all times relevant to this Complaint within the meaning of Title VII.

112.     Plaintiff was an "employee" and "employed" by Kent State at all times relevant to this Complaint within the meaning of Title VII.

113.     Plaintiff was objectively qualified for the hiring, benefits, promotions, and professional advancements associated with their employment, promised promotions, and tenure advancements associated with their employment as described in this Complaint within the meaning of Title VII at all relevant times.

114.     Title VII prohibits Kent State from discriminating against Plaintiff based on their sex, gender, gender identity, and gender expression in the hiring, benefits, advancement, and promotion of their profession and employment as described in this Complaint.

115.     Title VII further prohibits Kent State's evaluation of Plaintiff's employment by assuming or insisting that Plaintiff matches stereotypes associated with their group.

116.     As described in this Complaint, however, Kent State took several adverse employment actions against Plaintiff in the hiring, benefits, advancement, and promotion of their employment within the meaning of Title VII based on their sex, gender, gender

identity, and gender expression.

117. For example, and without limitation:

A. As described in this Complaint, Kent State failed to promote Plaintiff to positions for which they were objectively the most qualified candidate despite making non-conditional promises and unconditional offers to ascend them to those positions, including without limitation the benefits and professional advancements associated with same;

B. As described in this Complaint, Kent State assigned the benefits, professional advancements, and promotions it promised and offered to Plaintiff without conditions, and for which they were and remain the objectively most qualified candidate, to non-transgender persons, not in the same protected class under Title VII;

C. As described in this Complaint, Kent State assigned the benefits, professional advancements, and promotions associated with the promises and offers unconditionally made to Plaintiff, to a candidate or candidates, who lacked and currently lack Plaintiff's objectively superior qualifications;

D. As described in this Complaint, Kent State failed to adhere to its own CBA, policies, and procedures when considering Plaintiff's tenure transfer request; and

E. As described in this Complaint, Kent State failed to grant Plaintiff's tenure transfer request despite Plaintiff meeting all of its criteria.

118. By its acts and omissions described in this Complaint, Kent State unlawfully discriminated against Plaintiff and continues to do so, in the benefits, advancements, and promotions of their employment based on Plaintiff's sex, gender, gender identity, and

gender expression in violation of Title VII.

119.    Kent State's discriminatory acts and omissions based on Plaintiff's sex, gender, gender identity, and gender expression as described in this Complaint were intentional and deliberate within the meaning of Title VII.

120.    Kent State's stated reasons for depriving Plaintiff of the benefits, advancements, and promotions associated with their employment as described in this Complaint, were and remain false and pretextual within the meaning of Title VII.

121.    Kent State's stated reasons for depriving Plaintiff of the benefits, advancements, and promotions associated with their employment as described in this Complaint, served no legitimate business purpose within the meaning of Title VII.

122.    As a direct and proximate result of Kent State's violations of Title VII as described in this Complaint, Plaintiff has suffered damages in excess of the jurisdictional threshold of this Court to be determined by the trier of fact.

**Count II**
**Violations of 42. U.S.C. §1983, *et seq*.**
**by Defendants, Mandy Munro-Stasiuk, Ph.D. and**
**Julie M. Mazzei, Ph.D., Individually:**

**Denial of substantive and procedural due process**
**under the Fifth and Fourteenth Amendments to**
**the United States Constitution**

123.    Plaintiff incorporates the preceding paragraphs of this Complaint as if fully rewritten.

124.    The Fifth and Fourteenth Amendments to the United States Constitution state in pertinent part that Plaintiff shall not be "deprived of ... property, without due process of law."

125. Section 1983 states in pertinent part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

126. At all times relevant to this Complaint, Dean Munro-Stasiuk and Dr. Mazzei were acting under the color of law within the meaning of Section 1983.

127. Without limitation, Dean Munro-Stasiuk and Dr. Mazzei deprived Plaintiff of their rights, privileges, and immunities secured by the United States Constitution and laws in the manner described in this Complaint, by, without limitation, (a) unlawfully discriminating against Plaintiff in violation of Title VII based on their sex, gender, gender identity, and gender expression; and (b) failing to comply with Kent State's own policies and procedures in considering the benefits, advancements, and promotions of Plaintiff's employment.

128. By their unlawful acts and omissions identified in this Complaint, Dean Munro-Stasiuk and Dr. Mazzei further deprived Plaintiff of their substantive due process rights in their property interest in the form of Plaintiff's reasonable and objective expectation of professional reputation and reasonable advancement in their career and employment.

129. Without limitation, the acts and omissions of Dean Munro-Stasiuk and Dr. Mazzei described in this Complaint violated clearly established Constitutional law; thus, they aren't entitled to immunity under the Eleventh Amendment to the United States

22

Constitution.

130.    At all times relevant to this Complaint, the Fifth and Fourteenth Amendments to the United States Constitution have been enforceable by Plaintiff against Dean Munro-Stasiuk and Dr. Mazzei, individually, as Kent State employees acting under color law within the meaning of Section 1983.

131.    As a direct and proximate result of the violations by Dean Munro-Stasiuk and Dr. Mazzei of Plaintiff's rights arising under the Substantive and Procedural Due Process Clauses of the Fifth and Fourteenth Amendments to the United States Constitution as described in this Complaint, as applied to them by Section 1983 and otherwise, Plaintiff has suffered damages in excess of the jurisdictional threshold of this Court to be determined by the trier of fact.

**Count III**
**Violations of 42. U.S.C. §1983, *et seq*.**
**by Defendants, Mandy Munro-Stasiuk, Ph.D. and**
**Julie M. Mazzei, Ph.D., Individually:**

**Denial of equal protection under**
**the Fourteenth Amendment to**
**the United States Constitution**

132.    Plaintiff incorporates the preceding paragraphs of this Complaint as if fully rewritten.

133.    The Equal Protection Clause states that no state shall "deny to any person within its jurisdiction the equal protection of the laws."

134.    At all times relevant to this Complaint, Plaintiff had the individual right under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution to be free from disparate treatment and discrimination based on sex, gender,

23

gender identity, and gender expression in public employment.

135.    Under the Equal Protection Clause, discrimination and disparate treatment based on sex, gender, gender identity, and gender expression are presumptively unconstitutional and subject to intermediate scrutiny.

136.    At all times relevant to this Complaint, the Equal Protection Clause has been enforceable by Plaintiff against Dean Munro-Stasiuk and Dr. Mazzei, individually, as Kent State employees, and acting under color of law within the meaning of Section 1983.

137.    Equal protection analysis under Section 1983 based on Plaintiff's sex, gender, gender identity, and gender expression mirrors the analysis of Plaintiff's allegations of discrimination and retaliation in violation of Title VII on the same basis.

138.    The discrimination by Dean Munro-Stasiuk and Dr. Mazzei against Plaintiff based on sex, gender, gender identity, and gender expression as described in this Complaint was arbitrary and capricious and not substantially or rationally related to any legitimate government interest.

139.    Dean Munro-Stasiuk and Dr. Mazzei, acting individually and under color of law within the meaning of Section 1983, arbitrarily and capriciously subjected Plaintiff to violations of their liberty and property interests in the form of their benefits, advancement, and promotion of their career, profession, and employment by, without limitation, (a) directly and indirectly discriminating against Plaintiff in the manner described in this Complaint, (b) failing to comply with Defendants' own policies and procedures, and (c) failing to ensure that the effects of their discrimination were fully remedied.

140.    The discrimination by Dean Munro-Stasiuk and Dr. Mazzei against Plaintiff based on sex, gender, gender identity, and gender expression as described in this Complaint was arbitrary and capricious and violated Plaintiff's constitutionally-protected property interest in their occupation and employment, and the advancement and promotion of the same.

141.    The arbitrary and capricious acts and omissions of Dean Munro-Stasiuk and Dr. Mazzei described in this Complaint further deprived Plaintiff of their right to equal dignity and liberty by treating them as a second-class citizen.

142.    Dean Munro-Stasiuk and Dr. Mazzei purposefully and intentionally denied Plaintiff their constitutional protections under the Fourteenth Amendment by unlawfully discriminating against them based on their sex, gender, gender identity, and gender expression as described in this Complaint because they are transgender.

143.    This arbitrary and capricious selective, and pretextual treatment of Plaintiff by Dean Munro-Stasiuk and Dr. Mazzei, without limitation, as described in this Complaint, was and remains directly and indirectly related to their unlawful desire to perpetuate discriminatory gender stereotypes, irrational fears of transgender persons, and discrimination against transgender employees, and was not substantially or rationally related to any legitimate state or governmental interest, in violation of the Equal Protection Clause of the Fourteenth Amendment, in that governmental actors may not selectively deny protection to disfavored minorities like transgender persons.

144.    Without limitation, the arbitrary and capricious acts and omissions of Dean Munro-Stasiuk and Dr. Mazzei described in this Complaint violated and continue to

25

violate clearly established Constitutional law; thus, they are not entitled to immunity under the Eleventh Amendment to the United States Constitution.

145.　As a direct and proximate result of the violations of Plaintiff's rights arising under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution by Dean Munro-Stasiuk and Dr. Mazzei, without limitation, as described in this Complaint, Plaintiff has suffered damages in excess of the jurisdictional threshold of this Court to be determined by the trier of fact.

<strong>PRAYER FOR RELIEF</strong>

**WHEREFORE**, Plaintiff, GPat Patterson, Ph.D., prays for judgment against Defendants Kent State University, Mandy Munro-Stasiuk, Ph.D., and Julie M. Mazzei, Ph.D., jointly and severally, as follows:

A. Compensatory damages;

B. Damages in the form of back pay;

C. Damages in the form of front pay;

D. Damages in the form of emotional distress;

E. Statutory damages;

F. Injunctive relief by permanently barring Defendants, their agents, successors, and employees from continuing or maintaining the policies, practices, customs, and usages of denying, abridging, withholding, conditioning, limiting, or otherwise interfering with Plaintiff's right to employment, advancement, and promotion of their employment based on sex, gender, gender identity, and gender expression and the right to equal opportunities for employment as

secured by Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et seq*., 42 U.S.C. §1983, and the Fifth and Fourteenth Amendments to the United States Constitution;

G.  Injunctive relief by permanently barring Defendants, their agents, successors, and employees from continuing to discriminate against Plaintiff in the terms and conditions of their employment, in the form of restoring them to the benefits, positions, advancement, and promotion of their career as unconditionally offered and promised by Defendants;

H. Equitable relief;

I. Pre- and post-judgment interest on all damages;

J. An award of their attorney's fees, and costs;

K. An award of punitive damages; and

L. Such other relief the Court deems appropriate.

**JURY DEMAND**

Plaintiff demands a jury trial on all issues so triable.

Respectfully submitted,

*/s/ Justin Whittaker*

Justin Whittaker, Esq. (0093212)
WHITTAKER LAW, LLC
1431 Walnut Street
Cincinnati, Ohio 45202
Tel: (513) 259-3758
Fax: (513) 436-0698
Justin@WhittakerLawFirm.com

Trial Counsel for
Plaintiff GPat Patterson, Ph.D.

## CERTIFICATE OF SERVICE

I certify that on this <u>14</u> day of <u>March</u> 2023, a true copy of the

foregoing was electronically filed with the Clerk using the electronic filing system on the

following counsel of record:

David A. Yost, Esq.
Attorney General of Ohio

Daniel J. Rudary, Esq.
BRENNAN, MANNA & DIAMOND, LLC
75 East Market Street
Akron, Ohio 44308
DJRudary@BMDLLC.com

*/s/ Justin Whittaker*
Justin Whittaker, Esq. (0093212)

28